IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

**CHARLES FITZGERALD,**

    **Plaintiff,**

                                **No.:**
                                **JURY DEMAND**

**v.**

**NCI BUILDING SYSTEMS, INC.**

    **Defendant.**

## COMPLAINT

THE PLAINTIFF, CHARLES FITZGERALD, files this Complaint against the Defendant, NCI BUILDING SYSTEMS, INC. He shows:

**I.**
**PRELIMINARY STATEMENT**

1.    This case is brought under Tennessee common law, including the original case, *Clanton v. Cain Sloan*, 677 S.W.2d 441 (Tenn. 1984), which prohibits the exercise of workers compensation rights being a substantial factor in terminations of employment.

**II.**
**PARTIES, JURISDICTION, AND VENUE**

2.    The Plaintiff is Charles Fitzgerald, a resident of Henderson County, Tennessee.

3.    The Defendant, NCI Building Systems, Inc. is a foreign corporation (formed in Nevada, with a principal place of business in Houston, Texas).  It operates in Henderson County,

Tennessee where it employed Plaintiff.

4. This Court has jurisdiction pursuant to diversity of citizenship, as this case involves "citizens" of different states and the amount in controversy exceeds $75,000. 28 U.S.C. 1332(a)(1).

5. Venue in this Western District of Tennessee is proper pursuant to 28 U.S.C. 1391, because the Defendant does business in this district or resides in this district, and a substantial part of the events or omissions giving rise to this action occurred in this district.

## III.
## FACTUAL BASES FOR SUIT

6. Defendant employed Plaintiff for approximately five (5) years.

7. In July of 2011, Plaintiff disagreed with the total number of "occurrences" (unexcused absences) which Defendant had assigned to him. Plaintiff voiced that he should be exempt from certain occurrences. Yet Defendant would not relieve Plaintiff of these occurrences under any leave laws, or, even, allow Plaintiff to utilize vacation. When Plaintiff left work over this disagreement—at a time when he had available vacation to cover him—Defendant issued him a write up for "leaving work without permission."

8. On November 11, 2011, around 5:00 a.m., Plaintiff sustained an on-the-job injury to his neck.

9. Defendant's management had not arrived to work at that time, and it was not customary for them to do so.

10. Plaintiff understood that he was to report any injury to his direct supervisor. However, his direct supervisor, Jesse Mooney, was running late to work on that particular day. He was not at the plant around 5:00 a.m.

11. Given the circumstances, and not knowing of any other management that was

available, Plaintiff informed the lead person (Josh Parker) of the injury, instructed him to write out an injury report, and told him that it was necessary that he leave work due to the pain.

12. Defendant uses a "carrot and stick" type of approach to "lost time accidents." When its employees do not experience a "lost time accident" for a certain interval, Defendant rewards its employees through bonuses. But, conversely, if one employee experiences a lost time accident, then *all* of the other employees are penalized too. This creates an incentive to avoid going to the doctor, if possible, in order to avoid a lost time accident and, thereby, not incur the resentment and pressure of co-workers.

14. Plaintiff informed Parker that he would try to mend on his own, at home if he could stand it. Plaintiff then left work.

15. The following day, November 22, 2011, the pain had not relieved. Therefore, Plaintiff requested a doctor, and he obtained medical treatment with Dr. Stroup in Lexington, Tennessee. This was covered by workers compensation.

16. Dr. Stroup prescribed pain medication and took Plaintiff off work until a follow up appointment on or about November 28, 2011.

17. Prior to November 28, 2011, Plaintiff met with Defendant's plant manager, Barry Ivy, along with two other managers (Chris Bingham and Anthony ____). They discussed the situation of Plaintiff leaving work due to an injury, the fact that Plaintiff's supervisor was not present, and he did not know of any management that was present.

18. At this meeting, Barry Ivy informed Plaintiff that he understood the circumstances, that Plaintiff would <u>not</u> receive a write-up or any occurrence. Ivy then told Plaintiff that he would need to use one of his vacation days to cover the absence on November 21, 2011 (the date of injury). Plaintiff agreed. Ivy then provided Plaintiff the vacation form, Plaintiff signed it, and

Ivy signed it too.

19. Plaintiff went back to the doctor on November 28, 2011. Dr. Stroup released Plaintiff to return to work on November 29, 2011.

20. Plaintiff worked the whole day of November 29, 2011 without incident.

21. On November 30, 2011, Defendant's human resources manager, Dorinda Woodward, informed Plaintiff that he was fired. When Plaintiff asked how that could possibly be so, Woodward informed Plaintiff—contrary to the meeting with Ivy—that Plaintiff <u>did</u> incur discipline for leaving work on November 21, 2011 without first informing management, that this was a second incident, and, therefore, he was terminated.

22. The termination was very close, in timing, to Plaintiff reporting an on-the-job injury: one week. The termination was very close, in timing, to Plaintiff exercising his last medical treatment under workers compensation: one day.

23. The reason given—leaving work without permission—was a pretext because, inter alia: (1) Plaintiff's supervisor was not available; (2) Plaintiff was in significant pain; (3) he did report the incident and circumstances to his lead man; (4) Plaintiff's direct supervisor was not at work; (5) Plaintiff did not know of other management that was available; and (5) Defendant had already agreed Plaintiff's actions were appropriate and would be covered by a vacation day.

24. The termination has caused Plaintiff to suffer lost wages (back pay and/or front pay) and it caused him emotional suffering in the form of worry, anxiety, upset, and financial distress. He seeks these damages along with punitive damages to deter such wrongdoing in the future.

## IV.
## CAUSES OF ACTION

25. The foregoing facts are incorporated.

26. Plaintiff brings the following causes of action against the Defendant:

   a. Retaliatory discharge for exercising rights to workers compensation pursuant to Tennessee's workers compensation statute.

27. Plaintiff demands a jury.

WHEREFORE, PREMISES CONSIDERED, PLAINTIFF requests Defendant Answer this Complaint, that Plaintiff be awarded all monetary and compensatory and punitive damages available, any further relief at either law or equity to which he may be entitled.

Respectfully submitted,

GILBERT RUSSELL McWHERTER PLC

/s/ Justin S. Gilbert
JUSTIN S. GILBERT (017079)
JONATHAN BOBBITT (23515)
101 North Highland
Jackson, Tennessee 38301
(731) 664-1340
(731) 664-1540 (Facsimile)

*ATTORNEYS FOR PLAINTIFF*